UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIGUEL HERNANDEZ-BRAN,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General
of the United States of America, et al.,

Respondents.

**MEMORANDUM & ORDER**
26-CV-3388 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On April 29, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested

Petitioner Miguel Hernandez-Bran at John F. Kennedy International Airport ("JFK").  Petitioner

was ultimately transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he

remains detained.  He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF

No. 1 ("Petition").[1]

For the reasons that follow, his Petition is DISMISSED.

**BACKGROUND**[2]

Petitioner is a citizen of El Salvador who initially entered the United States without

inspection, on two separate occasions.  *See* ECF No. 1 ¶ 17; ECF No. 11 at 1–2.[3]  On April 29,

---

[1]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]    The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order.  The facts recited here are undisputed unless otherwise noted.  *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

[3]    Petitioner asserts that he "entered the United States without inspection in 2017 and has not left."  ECF No. 1 ¶ 17.  The government's account is slightly different; it asserts that

2026, after visiting his sister, Petitioner arrived at JFK with his wife and children.  ECF No. 1

¶ 20.  He was arrested there and transferred to various facilities in New Jersey before he was

ultimately transferred, on June 4, 2026, to the MDC.  *See id.* ¶¶ 18–23.

Petitioner initiated this action on June 5, 2026, by filing a petition for a writ of habeas

corpus.  *See generally id.*  Among other things, Petitioner states that:  (1) he has not received a

bond hearing in over 30 days since his arrest, *see* ECF No. 1 ¶ 4; (2) in May, an Immigration

Judge ("IJ") denied his bond request, *id.* ¶ 6; (3) he "does not have a final order of removal, he

does not have a criminal history, and his removal proceedings have not even started more than

30 days [after] his arrest," *id.* ¶ 7.  In light of these allegations, Petitioner claims that his

continued detention violates the Due Process Clause and that his detention is not authorized by

the Immigration and Nationality Act ("INA").  *Id.* ¶ 27–29.

Shortly thereafter, the Court issued an Order to Show Cause, directing the government to

show cause "why the petition should not be granted, and why Respondents should not be ordered

to immediately release Petitioner from detention, in light of the Second Circuit's holding in

*Cunha v. Freden*, --- F. 4th. ----, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026)," and

directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C.

§ 1225 or § 1226."  *See* June 8, 2026, Text Order.

The government filed its response on June 12, 2026, in which it sets forth its position

that:

> [T]he Court should dismiss the Petition as jurisdictionally barred by several
> subsections of 8 U.S.C. § 1252.  Alternatively, the Court should deny the Petition

---

Petitioner entered the country without inspection nine years earlier and that his entry in 2017 is
actually a reentry.  *See* ECF No. 11 at 1–2 (describing Petitioner's 2008 encounter with
immigration officials and noting that, in 2017, "records checks revealed that Petitioner was a
national of El Salvador who was previously removed and whose presence in the United States
was unlawful").  Petitioner does not contest this fact in his Reply.

2

> on the merits, because Petitioner is subject to a final order of removal—reinstated under 8 U.S.C. § 1231(a)(5)—and is therefore lawfully detained pursuant to 8 U.S.C. § 1231(a).

ECF No. 11 at 1 ("Response").  The government also provides a comprehensive factual background.  *See id.* at 1–4.  There, it asserts that :  (1) Petitioner was first encountered by immigration officials in October 2008 and was served with "a Form I-860, Notice and Order of Expedited Removal," and "a Form I-296, Notice to Alien Ordered Removed/Departure Verification," which both charged him as inadmissible; (2) in connection with the removal order—*i.e.*, the Form I-860—Petitioner was removed to El Salvador on November 18, 2008; (3) in February 2017, Petitioner reentered the United States and immigration officials quickly learned that he "was previously removed" and issued a "Form I-294, Warning to Alien Ordered Removed or Deported," which, among other things, reinstated the 2008 removal order.  *See id.* at 1–3.  The government further asserts that:  (4) later in February 2017, Petitioner was ultimately "released from custody on an order of supervision ('OSUP')," which required him to report to ICE Field Offices on multiple occasions; (5) Petitioner complied with those instructions for several years but failed to "report to ICE on his next scheduled date of March 29, 2021, or at anytime thereafter"; and (6) approximately five years after he first failed to report to ICE, on April 29, 2026, ICE officers arrested him at JFK, provided him "with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order," which informed Petitioner that he "was subject to removal under the reinstatement of the prior [2008] removal order," and "revoked the OSUP." *See id.* at 3–4.[4]

---

[4]    Obviously, the government's account of the relevant events differs from Petitioners. *Compare* ECF No. 1 ¶ 7 (stating that "Petitioner does not have a final order of removal, he does not have a criminal history, and his removal proceedings have not even started more than 30 days of his arrest"), *with* ECF No. 11 at 1–4 (detailing the 2008 issuance of the Notice and Order of Expedited Removal (Form I-860) and the multiple instances where the removal order was

Petitioner filed his reply a few days later.  *See* ECF No. 12 ("Reply").  Petitioner does not

contest the government's factual representations, nor does he address any of its legal arguments.

Instead, Petitioner's Reply argues, only, that because the government's Response was filed 26

minutes after the 4:00 p.m. deadline the Court set in a prior order, the "Court should grant the

instant writ and immediately order Petitioner released."  *See id*.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in

violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*,

136 F.4th 382, 393 (2d Cir. 2025).  A petition for a writ of habeas corpus under Section 2241,

"authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody

in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320

F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to

hear habeas corpus claims by non-citizens challenging the constitutionality of their detention."

*Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing

*Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

Petitioner seeks habeas relief because, in his words, his "continued detention violates the

Due Process clause of the United States Constitution," and his "detention is not authorized by the

Immigration and Nationality Act."  ECF No. 1 ¶¶ 28–29.  The government argues that the Court

lacks jurisdiction over the Petition because it is, "in substance, a challenge to the Petitioner's

reinstated final order of removal, and, therefore, is barred because Congress has enacted

---

reinstated since).  Because Petitioner does not contest the government's account or its evidence,
the Court relies on the government's representations for the purposes of this Order.

jurisdiction-stripping statutes that preclude the district courts from hearing challenges to the validity of a final order of removal."  ECF No. 11 at 4.  The Court agrees with the government.  As discussed below, this Court lacks jurisdiction over habeas petitions challenging final orders of removal.

The REAL ID Act of 2005 amended the immigration laws to strip district courts of jurisdiction over habeas corpus petitions that challenge final orders of removal.  *See Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011).  Section 1252 provides, in relevant part, that:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.

8 U.S.C. § 1252(a)(5).  By giving courts of appeals exclusive jurisdiction over review of final orders of removal, Section 1252(a)(5) "clearly preclude[s]" district courts from reviewing direct challenges to removal orders.  *See Delgado*, 643 F.3d at 55.  But there is more:  elsewhere, Section 1252 provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction . . . by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  Thus, taking Sections 1252(a)(5) and (b)(9) together, they "channel all challenges to removal orders and removal proceedings to the courts of appeals."  *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019).  Practically, this "mean[s] that *any* issue – whether legal or factual – arising from any removal-related activity can be reviewed *only* through a petition for review filed with an appropriate court of appeals."  *Id.* (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original)).

Moreover, the Second Circuit interprets this statute expansively, so as to preclude district courts from reviewing "indirect" challenges to removal orders. *See Delgado*, 643 F.3d at 55. Of course, not every suit brought against immigration authorities is a *per se* challenge to a removal order. *Id.* Indeed, "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id.*

Consistent with the Second Circuit's interpretation of Section 1252, courts within this Circuit "have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction." *Asylum Seeker*, 409 F. Supp. 3d at 225 (collecting cases); *see also, e.g.*, *Villatoro v. Shanahan*, No. 26-cv-1210, 2026 WL 948297, at *3 (E.D.N.Y. Apr. 7, 2026) (denying habeas relief due to lack of subject matter jurisdiction over petition seeking release "from mandatory detention" because "petitioner is making an indirect challenge to the removal order," and release "would frustrate the government's ability to enforce the removal order"); *Sauceda Henriquez v. Noem*, No. 25-cv-7023, 2026 WL 111665, at *4 (E.D.N.Y. Jan. 15, 2026) (denying habeas relief because "a challenge to a petitioner's detention, following an order of removal, constitutes such an indirect challenge to an order of removal" that is precluded by §§ 1252(a)(5) and (b)(9)); *Lin v. Borgen*, No. 25-cv-5618, 2025 WL 2158874, at *4 (S.D.N.Y. July 30, 2025) ("Petitioner's request to release him from his current detention and stay his removal is, in sum and substance, a challenge to his final order of removal. . . . This Court cannot entertain the Petition under the plain language of § 1252.").

Here, the government argues that Petitioner's request for release is barred by Section 1252 because "ICE is detaining Petitioner for the purpose of enforcing the reinstated final order of removal, and, as a result, his challenge to the stop, arrest, and detention is jurisdictionally barred." ECF No. 11 at 7. They cite several recent cases from this District that

hold Sections 1252(a)(5), (b)(9), and/or (g) bar claims to enjoin ICE from detaining an individual for the purpose of removal. *See, e.g.*, *Tzay-Tzay v. Brown*, No. 26-cv-3175, 2026 WL 1707115 (E.D.N.Y. June 11, 2026); *Jimenez v. Shanahan*, No. 26-cv-1501, 2026 WL 1309291 (E.D.N.Y. May 13, 2026); *Sauceda Henriquez*, 2026 WL 111665; *Shanahan*, 2026 WL 948297; *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025).

The Court finds that the removal order at issue here is final and subject to Section 1252(a)(5)'s jurisdictional bar. *See Delgado*, 643 F.3d at 54–55 (treating a reinstated expedited removal order as a "final order" for Section 1252 purposes); *see also Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("[I]n streamlined removal proceedings . . . the order becomes final immediately upon issuance."). And, based on the "substance of the relief" sought, Petitioner is indirectly challenging his order of removal. *See Delgado*, 643 F.3d at 55 ("[W]hether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking."). The specific relief he seeks involves an order "requiring [the government] to immediately release the Petitioner from custody absent a showing that he has a final order of removal or that circumstances have materially changed in his case." ECF No. 1 at 6. In other words, because Petitioner is detained pursuant to 28 U.S.C. § 1231,[5] by seeking release from mandatory

---

[5]    "Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 1231(a)(5) provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

28 U.S.C. § 1231(a)(5). A reinstated removal order is a final order of removal, *Guzman Chavez*, 594 U.S. at 534, so Petitioner's detention is authorized by Section 1231(a). Furthermore, the "government is required to detain an alien ordered removed until removal is effected, at least for the removal period." *Turkmen v. Ashcroft*, 589 F.3d 542, 547 (2d Cir. 2009).

detention, he seeks to frustrate the government's ability to enforce the removal order and is indirectly challenging the final removal order. *See Shanahan*, 2026 WL 948297, at \*3 (collecting cases). Put simply, his request that the Court release him from detention is "removal-related activity." *Asylum Seeker*, 409 F. Supp. 3d at 224. No matter how one characterizes Petitioner's request, the Court does not have jurisdiction to grant the relief he seeks. *Id.*

## CONCLUSION

For these reasons, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DISMISSED for lack of jurisdiction. Accordingly, the Court vacates its prior order prohibiting the government from removing Petitioner from the United States or transferring Petitioner to a facility outside of this District or the Southern District of New York. *See* June 8, 2026, Text Order.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
June 25, 2026

8